UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 12-289-KSF

FIRST TECHNOLOGY CAPITAL, INC.                      PLAINTIFF/COUNTERCLAIM
                                                                         DEFENDANT

v.                              **OPINION AND ORDER**

JPMORGAN CHASE BANK, N.A.                          DEFENDANT/COUNTERCLAIMANT
                                                          and THIRD-PARTY PLAINTIFF

v.

JAMES L. BATES                                                 THIRD-PARTY DEFENDANT

\* \* \* \* \* \* \* \* \* \*

This matter is currently before the Court upon the motion of the third-party defendant, James L. Bates, to dismiss the Third-Party Complaint filed by the Defendant/Counterclaimant, JPMorgan Chase Bank, N.A. ("Chase" or "JPMorgan"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state claims upon which relief can be granted [DE 13]. This motion is fully briefed and is ripe for review.

Also before the Court is Chase's motion for leave to file a surreply or to strike Bates' reply [DE #16]. Chase contends that Bates' reply improperly asserts new arguments not previously raised in his motion to dismiss and that Chase has not had an opportunity to address. Bates' reply does expand on and provide additional support for arguments raised in his motion to dismiss; however, the Court does not find that striking the reply is necessary in this matter. The Court will deny

1

Chase's motion to strike, but will grant its motion for leave to file a surreply in order to consider Chase's responses to the new arguments raised in the reply brief.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

On August 10, 2012, the plaintiff, First Technology Corporation, Inc. ("First Technology" or "FTC"), filed its Petition for Declaration of Rights in Woodford Circuit Court [DE #1]. In its Petition, First Technology alleges that it owns a beneficial trust interest in and to an aircraft leased by the trust to American Airlines. American Airlines has filed for bankruptcy, and First Technology was awarded an Allowable Claim ("the Claim") within the bankruptcy estate of American Airlines. The Claim is the subject of a Uniform Commercial Code security interest in favor of the Federal Deposit Insurance Corporation ("FDIC"), successor in interest to the Tennessee Commerce Bank. First Technology alleges that the lien is filed and of public record in the Office of the Secretary of State of Kentucky.

First Technology contends that numerous financial institutions, including Chase, were interested in purchasing the Claim. On June 28, 2012, First Technology alleges that it conditionally agreed upon the sale of the Claim to Chase based on an email communication from John C. Barone, an employee of Chase, stating:

> bid is good until 5pm EST [EDT] today, June 28, 2012 and is subject to review of your due diligence and execution of a Transfer of Claim agreement.

First Technology, however, contends that while the parties agreed upon a price, it did not review the due diligence or reach final terms in a written and executed Transfer of Claim agreement which would have made consummation of the transaction contingent upon the release by the FDIC of its lien. Accordingly, First Technology alleges that the parties did not consummate the transaction as

conditionally agreed and that a binding contract does not exist. First Technology seeks an adjudication of the rights of the parties and a determination that no contract exists for the sale of the Claim.

Chase filed its notice of removal on September 11, 2012 [DE #1]. On October 12, 2012, Chase filed its Answer, Third Party Complaint against James L. Bates, President and CEO of First Technology, and Counterclaim against First Technology [DE #6]. Chase's Third Party Complaint and Counterclaim against Bates and First Technology sets forth three counts. In the first count, Chase asserts a claim for breach of contract against First Technology. In the second count, Chase asserts a claim for fraud against Bates and First Technology. Finally, in the third count, Chase asserts a claim for negligent representation against Bates and First Technology.

Bates has filed a motion to dismiss the Third Party Complaint against him [DE #13]. Bates' motion contends that Chase's Third Party Complaint against him should be dismissed for the following reasons: (1) it fails to plead the fraud count with the requisite degree of particularity required by Rule 9(b) of the Federal Rules of Civil Procedure; (2) it is inseparably intertwined with the underlying contract action and is, therefore, barred by the economic loss doctrine; (3) it is not actionable under Kentucky law as the fraud and negligent misrepresentation claims relate to future conduct; and (4) it sets forth no factual or legal basis which would allow for the imposition of personal liability against Bates and fails to make any allegations which would permit the Court to pierce the corporate veil of First Technology.

## II. MOTION TO DISMISS STANDARD

The standard for ruling on a motion to dismiss is that a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), abrogating *Conley v. Gibson*, 355 U.S. 41 (1957).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Id.* at 555 (internal citations and quotation marks omitted).

In ruling upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), all of a plaintiff's allegations are presumed true, and the complaint is construed in the light most favorable to the plaintiff. *Hill v. Blue Cross and Blue Shield of Michigan*, 409 F.3d 710, 716 (6th Cir. 2005). A district court may not grant a Fed. R. Civ. P. 12(b)(6) motion because it does not believe the complaint's factual allegations. *Wright v. MetroHealth Medical Center,* 58 F.3d 1130, 1138 (6th Cir.1995). However, "[c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Bishop v. Lucent Technologies, Inc.*, No. 07-3435 (6th Cir. 3/25/08) (citing *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)). "Although we must accept all of the complaint's factual allegations as true, we 'need not accept as true legal conclusions or unwarranted factual inferences.'" *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003) *(*quoting *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987)).

III.   ANALYSIS

    A.   CHASE'S FACTUAL ALLEGATIONS

For purposes of Bates' motion, the Court will accept the facts, as alleged by Chase, as true. On June 22, 2012, at 1:02p.m. EDT, Thomas Bunch, an attorney acting as agent for First Technology, emailed a Chase representative, Matthew Pennella, to solicit a bid for the "sale, assignment and transfer" of First Technology's allowed unsecured Claim of $22,886.139 in American Airlines bankruptcy proceeding. Later that same day, Chase extended a bid to First Technology offering to pay 33 percent of the value of the Claim "which will result in net proceeds to your client of $7,552,425.87" if accepted by "5pm EST [sic] today." Chase alleges that this bid was not accepted, and Chase and First Technology continued to negotiate by email and telephone over the next several days. These negotiations were conducted by John-Carl Barone for Chase and by Bunch, and sometimes Bates, for First Technology.

On June 28, 2012 at 3:51 p.m. EDT, Bunch sent the following email to Barone:

> [w]e have a confirmed offer from U.S. Bank for the sale of the AA Allowed Claim of $22 million plus at 35 cents if we accept, confirm and bind ourselves on or before five p.m. Eastern today. Should we accept that offer?

Then, at 4:45 p.m. EDT Barone emailed Bates, with a copy to Bunch offering a "best and final bid" for the sale and transfer of the Claim at a price of 35.75 percent of the allowed amount of the Claim. Barone's email to Bates and Bunch stated (emphasis in original):

> First, thank you again for giving JPMorgan the opportunity to bid on your claim, this is an important transaction for us. I understand that you are on a conference call and can't speak, so I spoke with our desk and JPMorgan is please [sic] to provide you with a best and final bid at 35.75% on your $22mm allowed American Airlines, Inc. claim. This bid is good **until 5pm EST** [sic] **today**, June 28, 2012 and is subject to review of your due diligence and execution of a Transfer of Claim agreement. We [sic] very

5

> interested in working with you on this opportunity and hope this is reflected in our bid. Please confirm via email if we are done and you would like to lock in this price.

At 5:19 p.m. EDT, Bunch sent an email to Barone, with a copy to Bates, showing the previous email from Barone and accepting the offer on behalf of First Technology. His email stated as follow:

> Mr. Bates has authorized me to accept your offer below during our agreed extended time. I will have Mr. Bates confirm this by separate email. Please advise when we may close. I would like to do the extra and final paperwork tomorrow afternoon: we are both exhausted right now.

Barone responded to Bunch, with a copy to Bates at 5:22 p.m. EDT, stating:

> Thank you for your email. Upon Mr. Bates [sic] confirmation email, we will be done at 35.75% subject to the provisions outlined under our initial bid. Please have Mr. Bates send me an email with his confirmation. Thank you again for choosing to work with JPMorgan on this important transaction.

At 5:33 p.m. EDT, Bunch sent a response to Bates, stating in part:

> thank you and please know that it was a pleasure working with you on this sale and that we believe that you are very good in your job and like the way you presented yourself via email and phone. Come down to Lexington in Central Kentucky and Mr. Bates and I will show you the horse farms and the thoroughbred [sic] horses and maybe some horse racing.

Bunch also sent an email to Barone, at 2:34 p.m. PDT[1], with a copy to Bates showing the previous email and confirming First Technology's acceptance of the offer from Chase, stating

> this is to verify that Mr. Bates was on the conference call with you, your trader and me and that he orally verified the transaction agreed upon. He will email you another confirmation tomorrow morning Friday.

Then, at 8:34 p.m. EDT, Bates, identifying himself as President of First Technology, responded to Bunch and Barone, showing the previous email from Bunch, and stating "this will confirm the email

---

[1]The Court assumes this to be 5:34 p.m. EDT.

6

from Tom" [Bunch]. Barone responded at 8:54 p.m. EDT to Bunch and Bates, showing the previous email and stating in part:

> Great, thank you and have a nice weekend. We will work with Tom tomorrow and begin working on the transfer agreements. Please have Tom send me a W-9 form for FTC tomorrow.

The next day, at 11:55 a.m. EDT, Bunch sent an email to Howard Grossman, an attorney acting on behalf of Chase, with a copy to Barone, Bates, and two others, notifying Grossman of a lien issue. Bunch's email stated:

> If you run a UCC search, you will find a February 2012 Article 9 filing for a lien on the assignment of the master lease in favor of Tennessee National Bank. This bank is in receivership with the FDIC but the loan agreement is current and not in default. The lending document and the other agreements do not include an assignment of rental proceeds so it is our conclusion that the allowed claim sale proceeds go to FTC. We will forward all documents to you for your evaluation and conclusions, but in the meantime we have representatives negotiating with the FDIC for the sale of our paper to FTC, which will ameliorate any future legal problems with your client. Otherwise if necessary we can close the transaction with a trust agreement that all proceeds of the sale be held by a trustee in escrow for all parties pending resolution of any disputes. We believe all problems will be settled before we have any closing.

Over the next several days, First Technology provided Chase with more information and documents regarding the Claim. During this time, the market demand for American Airlines' bankruptcy claims increased, and claims began selling for prices greater than the agreed contract price. Chase contends that based on First Technology's assurances that it had the right to transfer the Claim, and consistent with the market practice for the purchase and sale of trade claims in the secondary market, Chase sold the Claim in two portions to two other purchasers.

Then, on July 16, 2012, at 11:59 a.m. EDT, Bunch emailed Barone and Grossman, with a copy to a paralegal in the Chase legal department. The email attached various documents, including a previous transmittal email to Bunch from Rita Carpenter, the Operation Coordinator for First

Technology, she sent on July 6, 2012 at 11:07 a.m.  Her email had forwarded a copy of an earlier email she had sent dated April 11, 2012 at 9:17 a.m. to Bunch, Bates, and Andrew Stephens, an attorney representing First Technology, which stated "Please find attached the following Loan/Note Agreements with Tennessee Commerce Bank," and listed ten documents.  All of these documents were being forwarded again by Carpenter to Bunch, and by Bunch to Barone and Grossman.  Bunch's email stated:

> here are all the Tenn.Commerce [sic] Bank loan docs relating to FTC.  The other documents you requested, i.e. the Sept. 30 doc is in my email attachment marked AA Lease 2.  The 1999 lease assignment is probably somewhere therein but I could not find it.  I suggest that it is historic and does not impact the current allowance.  If you feel different I can go back to Doughtery Air and inquire if they can locate it.

The ten documents Carpenter attached in her April 11, 2012 email to Bunch, Bates, and Stephens, and later sent by Bunch to Barone and Grossman on July 6, 2012, included the following:

(1) a "Loan and Security Agreement" dated September 30, 2010 between First Technology and "Borrower" and Tennessee Commerce Bank as "Lender, signed by Bates, establishing the terms and conditions of a $10.47 million loan to First Technology, to be secured by all assets of First Technology;

(2) a "Collateral Assignment of Beneficial Interests" dated September 30, 2010, signed by Bates, establishing collateral security for a loan to First Technology of $10.47 million by assigning a security interest in First Technology's beneficial interest in the Trust owning the American Airlines claim;

(3) a "Purchase and Transfer Guaranty Indemnity" dated September 30, 2010 by First Technology and "James L. Bates, individually" as "Indemnitors" in favor of Tennessee Commerce Bank as "Lender," signed by Bates both in his capacity as President of First Technoloy and individually, which provides in paragraph 5: "Without Lender's prior written consent, (a) FTC, as the Owner participant (as defined in the Investment Trust Agreement), will not sell or transfer any interest in or to the Trust . . . and (d) there will be no amendment, modification of, or waiver or release by any Indemnitor of its rights under any of the Transfer Documents, Lessor Documents or the Guaranty Documents;" and

8

    (4)    a "Note Modification Agreement" effective as of September 29, 2011 between First Technology as "Borrower" and Tennessee Commerce Bank as "Lender" signed by Bates both in this capacity as President of First Technology and individually for purposes of the effectiveness of the "Purchase and Transfer Guaranty Indemnity," and notarized on September 28, 2011, extending the maturity date for the loan from Tennessee Commerce Bank, and otherwise ratifying and affirming the other loan documents in all respects.

On July 11, 2012 at 12:06 p.m. EDT, Bunch sent an email to Grossman, with a copy to Barone and others, stating in part:

> FTC owns the aircraft and the claim and has a right to sell the claim to Chase. Mr. Bates and I believe you have done all due diligence in verification of ownership of the claim and you should be ready to do the Transfer of Claim documents. Mr. Bates has instructed me to provide no further information to you and to advise you that we have emailed everything that we have and can supply nothing else. He is upset about the costs of document production when Chase is protected by the finality of the AA order. Thus my instructions are to review the final transfer documents, get you the AA Claims Register POC Number (due later this week) and move toward closing. We all believe that we have more that [sic] satisfied what would be yours and our due diligence. If you have any questions or need to discuss any of the above, I will be available all afternoon today.

Later, at 2:16 p.m. EDT, Grossman sent an email to Bunch and others showing the previous email from Bunch, and stating:

> Thank you Tom. This will confirm our conversation of this afternoon in which we advised you that we had received all of the requested due diligence supporting the claim. All we need now is for the claim to be appropriately listed on the claims register (which you have been advised should happen this week). Once that occurs, we will forward a transfer of claim agreement based on the listing and review and proceed to close the transaction.

A few minutes later, at 2:39 p.m. EDT, Bunch responded to Grossman, with a copy to Barone, showing the previous email from Bunch, and stated "Thank you and I have so advised Mr. Bates."

On July 16, 2012, at 12:09 p.m. EDT, Grossman emailed Bunch and others, stating:

> We see that the claims register now lists Doughtery Air as the claim holder. Accordingly, I attached a proposed Transfer of Claim Agreement for your review listing both FTC and Doughtery Air. We are glad to discuss at your convenience.

Chase contends that at this time, it had completed its due diligence and had also tendered a customary Transfer of Claim Agreement form to First Technology. Thereafter, according to Chase, only First Technology's failure to execute the transfer documents prevented the transfer of the claim.

Meanwhile, Chase contends that the market price of the American Airlines allowed bankruptcy claims continued to rise, and Chase began receiving communications from attorneys for the two entities to whom Chase had already sold partial interests in the Claim. On July 24, 2012, First Technology's attorney, Andrew Stephens, telephoned Grossman to explain that Tennessee Commerce Bank had been taken over by the FDIC, and that First Technology was negotiating with the FDIC to release the lien on the Claim, but that the lien had not been released yet. Chase also contends that Stephens indicated that Bates had instructed him to ask if Chase would increase its price to 40 percent of the value of the Claim from the previously agreed upon 35.75 percent. Stephens added that this would make any problem with the transfer "go away."

On July 25, 2012, Stephens phoned Grossman again, and told him that First Technology had settled the lien issue with the FDIC, but that it would take 10 to 12 days for the lien release to be finalized. Grossman indicated to Stephens that Chase wanted to complete the transfer as soon as possible, and discussed the fact that Chase had sold the Claim to other purchasers.

On August 1, 2012, at 6:01p.m. EDT, Bunch emailed Grossman, Barone, and Stephens stating that the FDIC had "soundly rejected" a proposal involving the release of the security interest on the Claim. Bunch explained that First Technology intended to make another offer to the FDIC on August

10

3, and that there would be "a two week time factor for the acceptance/rejection factor and then a closing time factor." A week later, on August 8, 2012, Stephens called Grossman and said that First Technology had sent a large payment to the FDIC on Friday, August 3, and an offer to compromise the underlying loan. Stephens indicated that it would take two to three weeks for a decision, and more time after that for any agreement with the FDIC to close. Grossman again indicated that it was imperative that First Technology transfer the Claim to Chase as soon as possible. On August 17, 2012, First Technology filed this lawsuit in Woodford Circuit Court against Chase [DE #1-1].

    **B.    CHASE'S CLAIMS FOR FRAUD SATISFY THE RULE 9(b) PLEADING REQUIREMENTS**

The Court turns first to Chase's allegations of fraud against Bates. Chase contends that Bates' failure to disclose the lien on the Claim until after the parties had entered into a contract for the purchase of the Claim amounts to fraud. Bates, however, contends that Chase's claims for fraud and negligent misrepresentation must be dismissed for failure to plead with the requisite particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.

Rule 9(b) states as follows:

> **Fraud or Mistake; Conditions of Mind.** In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. . . .

Fed.R.Civ.P. 9(b). In this diversity action, Kentucky law applies. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). Under Kentucky law, a party asserting fraud must show the following six elements: (1) a material misrepresentation; (2) which is false; (3) which was known to be false or made recklessly; (4) made with inducement to be acted upon; (5) which is acted upon in reliance thereon; and (6) causes injury. *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999); *Clayton v. Heartland Res., Inc.*, 754 F.Supp.2d 884, 899 (W.D.Ky. 2010). All six elements must be

11

proven by "clear and convincing evidence." *Id*. Additionally, the party asserting fraud must overcome Kentucky's long-recognized "presumption of innocence and honesty against fraud claims." *Compressed Gas Corp. v. United States Steel Corp.*, 857 F.2d 346, 349-50 (6th Cir. 1988)(citing *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky.App. 1978).

Applying these standards to the Third Party Complaint, the Court finds that Chase has satisfied the requirements of Rule 9(b). Chase alleges a material misrepresentation in the form of First Technology's solicitation of an offer for the "sale, assignment and transfer" of the Claim without disclosing the lien in favor of the FDIC. Moreover, Chase alleges that neither Bates nor his representatives ever made the disclosure necessary to correct this misrepresentation until well after a contract was formed.[2] There is no dispute that Bates knew of the lien prior to June 28, 2012, or that Bates intended for Chase to rely on their offer to sell the Claim. While Bates contends that information about the FDIC's lien on the Claim was publicly available, Kentucky courts have never held that a commercial party such as Chase has an obligation "as a matter of law" to know the contents of all allegedly public material information concerning the subject of the contract. *See, e.g., Stallard v. Adams*, 228 S.W.2d 430, 432 (1950)("The fact that appellees could have gone to the records and learned what were the restrictions covering this property does not prevent them from prosecuting this action against appellants for deceit by reason of misrepresentations Stallard knowingly made to Adams relative thereto, where Adams was ignorant of what the restrictions were"); *Insko v. Ransdell*, 2008 WL 54770, *2 (Ky.App. Jan. 4. 2008)(unpublished)("[I]n the case of fraud, the victim is not required to have prevented the fraud by examining the public record to

---

[2]While the existence of a contract is in dispute, for purposes of this motion, the Court accepts as true Chase's allegation that a contract existed on June 28, 2012.

ascertain the truth of the representation"); *Harris v. Brock*, 2003 WL 22872319, *7 (Ky.App. Dec. 5, 2003)(same). Finally, Chase has sufficiently alleged its injury by claiming that it "relied to its detriment on those statements and commitments, and suffered damages as a result." Namely, Chase alleges that it intended to enter into the contract on June 28, 2012 to purchase the Claim at 33.75% of the stated value, but the market price increased after June 28, 2012 and Chase failed to obtain the benefit of the bargain.

These allegations are sufficient to satisfy the pleading requirements, particularly at this initial stage involving a motion to dismiss before discovery has begun and taking all allegations in the light most favorable to Chase. *Whalen v. Stryker Corp.*, 783 F.Supp.2d 977, 982 (E.D.Ky 2011). Accordingly, Bates' motion to dismiss Chase's fraud claim for failure to satisfy Rule 9(b) pleading requirements will be denied.

    **C.    THE ECONOMIC LOSS DOCTRINE DOES NOT BAR THE CLAIMS AGAINST BATES**

Bates next argues that Chase's fraud and negligent misrepresentation claims are inseparable and based upon the exact same factual allegations as the breach of contract claim, and thus are barred by the economic loss doctrine. According to the Supreme Court of Kentucky, "the 'economic loss rule' prevents the commercial purchaser of a product from suing in tort to recover for economic losses arising from the malfunction of the product itself, recognizing that such damages must be recovered, if at all, pursuant to contract law." *Giddings & Lewis, Inc. v. Industrial Risk Insurance*, 348 S.W.3d 729, 733 (2011). While *Giddings* held that negligent misrepresentation claims in the products liability context are barred by the economic loss doctrine, it has no application in this case. Chase's

claims are not based on the "malfunction" of any product. Accordingly, Chase's claims are not barred by the economic loss doctrine.

### D. CHASE'S FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS ARE NOT SOLELY RELATED TO FUTURE EVENTS

Bates also argues that Chase's fraud and negligent misrepresentation claims against him are barred by Kentucky law because they relate to future conduct, which he claims is not actionable. In support of this argument, Bates points to the following email from Bunch on June 29, 2012, which states (emphasis added):

> We will forward all documents to you for your evaluation and conclusions, but in the meantime we have representative negotiating with the FDIC for the sale of our paper to FTC, which will ameliorate any future legal problems with your client. Otherwise if necessary we can close the transaction with a trust agreement that all proceeds of the sale be held by a trustee in escrow for all parties pending resolution of any disputes. **We believe all problems will be settled before we have any closing**.

Bates contends that because this was a representation of a future event, it does not amount to fraud. However, Chase has alleged that on June 28, 2012, Bates misrepresented the existing fact that First Technology could actually convey the Claim, despite knowing that it was encumbered by a lien. While Bates did later express an opinion that the lien problems would be settled, it is his misrepresentation on June 28, 2012 that First Technology could actually convey the claim without disclosing that a lien existed that is the basis of Chase's fraud claim. On June 28, 2012, it was a fact, not an opinion, that the Claim was encumbered by a lien in favor of the FDIC. Accordingly, Chase's fraud claims against Bates are not solely based on future claims and beliefs, and thus will not be dismissed on this ground.

### E. CHASE'S CLAIMS AGAINST BATES INDIVIDUALLY

Finally, Bates contends that Chase's Third Party Complaint fails to allege the requisite facts which would allow for the Court to pierce the corporate veil and impose personal liability against him. However, as Chase argues, it does not need to pierce the corporate veil to assert tort claims against Bates, even if he was acting as the agent of First Technology in his communications and representations to Chase. The Kentucky Supreme Court, in *Peters v. Frey*, 429 S.W.2d 847, 949 (Ky. 1968), held that "the agent of a corporation, albeit a principal shareholder and officer of the corporation, 'is personally liable for a tort committed by him although he was acting for the corporation.'" This holding is consistent with KRS 271B.6-220, which states in part: "a shareholder of a corporation shall not be personally liable for the acts or debts of the corporation except that he or she may become personally liable by reason of his own acts or conduct.

Bates also argues that he cannot have engaged in any tortious conduct because the contract was simply an agreement to agree, and not enforceable. Whether or not the contract is enforceable is not before the Court at this time. For purposes of Bates' motion to dismiss, the Court is required to presume all of Chase's allegations are true, and construe the facts in the light most favorable to Chase. *Bell Atlantic v. Twombly*, 550 U.S. 544, 547 (2007). Applying this principle to Chase's claims, the Court finds that Chase's claims for fraud and negligent misrepresentation against Bates, individually, may proceed and his motion to dismiss will be denied.

### IV. CONCLUSION

The Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1) Chase's motion for leave to file a surreply [DE #16] is **GRANTED**, and the Clerk is **DIRECTED** to **FILE** the proposed surreply [DE #16-3]; Chase's motion to strike [DE #16] is **DENIED**;

(2)     Bates' motion to dismiss the Third Party Complaint [DE #13] is **DENIED**.

This March 15, 2012.



Signed By:
*Karl S. Forester* KSF
United States Senior Judge